658 A.2d 255

Melvin BROWN,

v.

COUNTY COMMISSIONERS OF CARROLL COUNTY.

No. 61, Sept. Term, 1994.

Court of Appeals of Maryland.

May 17, 1995.

288

Franklin M. Johnson, Jr., Legal Aid Bureau, Inc., of Silver Spring (Susan Stauffer, Legal Aid Bureau, Inc. of Frederick), on brief, for appellant.

Charles W. Thompson, Jr., County Atty. for Carroll County (Mary J. Murphy, Asst. County Atty., both on brief), Westminster, for appellee.

Carmen M. Shepard, Asst. Atty. Gen. (Kathleen S. Hoke, Staff Atty., J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, amicus curiae.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ.

CHASANOW, Judge.

In the present case, we must determine whether an indigent pretrial detainee may be held personally liable for the costs of medical treatment received while incarcerated, despite the fact that he may have been covered under the Maryland Medical Assistance Program for most of the period of his detention.

## I.

Melvin Brown was arrested on April 28, 1991 as a result of an altercation in which he was injured. Brown was unable to post bail and was therefore held at the Carroll County Detention Center until his release on September 26, 1991. At the time of his incarceration, Brown executed a "Health Services Consent Form," which authorized the provision of medical services to Brown by the Detention Center. The consent form further provided:

"I UNDERSTAND THAT ALL NECESSARY MEDICAL CARE WILL BE PROVIDED, BUT FURTHER

UNDERSTAND THAT ALL MEDICAL CARE PROVIDED OUTSIDE OF THE DETENTION CENTER (i.e. OPTICAL, DENTAL, HOSPITAL, ETC.) WILL BE DONE AT MY OWN EXPENSE. IF THERE IS A BALANCE DUE FOR MEDICAL CARE WHEN I AM TRANSFERRED OR RELEASED FROM CUSTODY, I UNDERSTAND IT IS MY OBLIGATION TO PAY THIS BALANCE. IF THE BALANCE IS NOT SATISFIED WITHIN 30 DAYS, IT MAY BE REFERRED TO THE COUNTY ATTORNEY FOR POSSIBLE CIVIL ACTION AGAINST ME."

At the time Brown entered the Detention Center, Brown had been certified by the Carroll County Department of Social Services as qualified for benefits under the Maryland Medical Assistance Program ("MA"), which provides coverage for indigent persons.[1] As a recipient of Aid for Families with Dependent Children ("AFDC"), Brown was entitled to receive MA benefits from October 1, 1990 until May 31, 1991. Brown testified that when he entered the Detention Center, he was asked whether he had health insurance and he informed the personnel that he had MA coverage. He stated that he told personnel at the Detention Center that his MA card was in his wallet, which had been confiscated by the Detention Center, and that he was told that the Detention Center "would take care of it."

While incarcerated, Brown received various medical treatments outside of the Detention Center, including treatment at the Carroll County General Hospital on April 29, 1991 and a visit to an ophthalmologist's office on May 3, 1991. Additionally, on June 24, 1991, Brown was taken to a dentist's office to

---

1. MA is federally funded under the Medicaid program. See 42 U.S.C. § 1396 et seq. (1988 & Supp. V 1993). MA eligibility is determined by the local Department of Social Services. Code of Maryland Regulations (COMAR) 10.09.24.04A (1991). The MA program is administered by the Secretary of the Department of Health and Mental Hygiene. See Maryland Code (1982, 1994 Repl.Vol.), Health–General Article, § 15–103(a). Claims for reimbursement are submitted to the Department of Health and Mental Hygiene. See Md.Code (1982, 1994 Repl.Vol.), Health–General Art., § 15–105.

have several teeth extracted. The parties do not dispute that Brown did not qualify for benefits under MA for the dental treatment. The cost of all of the medical treatment Brown received totalled $649.60, which was paid by the Detention Center without seeking reimbursement under MA from the Department of Health and Mental Hygiene ("DHMH").

Subsequent to paying Brown's bills, the County Commissioners of Carroll County ("the County") sought reimbursement from Brown pursuant to Maryland Code (1957, 1991 Repl.Vol.), Article 87, § 46,[2] and judgment was entered by the District Court against Brown in the amount of $649.60. Brown appealed to the Circuit Court for Carroll County which, following a *de novo* trial, granted judgment in favor of the County. We granted Brown's petition for a writ of certiorari to consider whether an indigent pretrial detainee may be held personally liable for medical costs incurred while incarcerated, despite the fact that he might be covered under Maryland MA for some of those charges.

## II.

■ Brown and the County differ in their interpretations of the scope of benefits provided by MA. The MA program has both federal and state aspects. Also known as Medicaid, MA is funded by both the federal and state governments and is subject to regulations and statutes from both authorities. The federal Medicaid program is codified at 42 U.S.C. § 1396 *et seq.* (1988 & Supp. V 1993). Because Maryland participates in the Medicaid program through the MA program, it must comply with the governing federal statutes and regulations. *Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714

---

2. Md.Code (1957, 1991 Repl.Vol., 1994 Cum.Supp.), Art. 87, § 46 was amended effective July 1, 1994. This amendment, although not a substantive one, was not in effect at the time of the present cause of action. Because the amendment did not make substantive changes to the reimbursement provisions at issue in the instant case, we shall refer to the language of the current statute. Thus, unless otherwise specified, all references to Art. 87, § 46 are to Md.Code (1957, 1991 Repl.Vol., 1994 Cum.Supp.).

n. 1, 83 L.Ed.2d 661, 664 n. 1 (1985); *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794 (1980). Eligibility for individuals under MA is therefore governed by both federal and state statutes and regulations. We find no indication that Maryland's MA program is intended to be more restrictive or broader than the federal Medicaid regulations with regard to the issues in the instant case.

Brown and the County each rely on different interpretations of Art. 87, § 46 and Md.Code (1982, 1994 Repl.Vol.), Health–General Art., § 15–113 [3] to support their arguments regarding Brown's liability for the costs of his medical treatment. Article 87, § 46 provides in pertinent part:

"(b) The sheriff shall provide food and board for all prisoners committed to the sheriff's charge and food and other articles for the comfort of sick prisoners as the physician attending the prisoners may deem necessary, the expense of which shall be paid by the county or Baltimore City.

(c) Sick, injured, or disabled prisoners including those committed to the Commissioner of Pretrial Detention and Services shall be responsible for reimbursing the county or the State, as appropriate for the payment of all medical care, and shall furnish the sheriff with the following information:

(1) The existence of any health insurance, group health plan, or prepaid medical care coverage under which the prisoner is insured;

(2) *The eligibility for benefits under the Maryland Medical Assistance Program to which the prisoner is entitled;*

(3) The name and address of the third party payor; and

(4) The policy or other identifying number.

\* \* \* \* \* \*

(e) The liability for payment for medical care described under subsection[ ] (c) ... of this section may not be

---

**3.** Unless otherwise specified, all references to § 15–113 are to the Md.Code (1982, 1994 Repl.Vol.), Health–General Art.

construed as requiring payment by any person or entity, except by a prisoner personally or through coverage or benefits described under subsection (c) of this section." (Emphasis added).

Section 15–113 of the Health–General Article provides:

"(a) *'Inmate of a public institution' defined.*—In this section, 'inmate of a public institution' has the meaning stated in Title 42, §.435.1009 of the Code of Federal Regulations (1978 edition).

(b) *Payment required.*—(1) If an inmate of a public institution is eligible for federally funded Medicaid benefits, the Department [of Health and Mental Hygiene] shall pay the custodial authority for any medical care that is provided to the inmate during the month when the individual became an inmate.

(2) Payments under this subsection shall be made in accordance with applicable rules and regulations for the [Medical Assistance] Program.

(c) *Reimbursement.*—The Department shall be reimbursed for the nonfederal cost of medical care by either the State or local authority that is responsible for the inmate of a public institution."

Brown argues that he should not be held liable for any of the medical costs incurred on his behalf. He asserts that the Detention Center was not permitted to seek reimbursement from him before submitting a claim to DHMH for those costs which were covered under MA. Brown argues that reimbursement was available to the County during the first month of his incarceration under § 15–113. He further asserts that Art. 87, § 46(c)(2) would be meaningless if it required inmates or pretrial detainees to provide information regarding insurance and MA coverage, but did not require the County to utilize this information to seek reimbursement from these sources. Brown maintains that the consent form he signed is not a binding contract and that because, under the County's and the lower courts' interpretation, he would have been eligible for MA benefits had he been able to post bail, the

denial of MA benefits only to those pretrial detainees who are unable to make bail is a violation of equal protection. Additionally, Brown claims that, even with regard to the dental bill for which he was not eligible for MA benefits, imposing the expense of medical treatment upon him without first establishing his ability to pay those costs is a violation of due process.

Relying on an opinion of the Attorney General that responded to an inquiry from the Baltimore City Solicitor regarding the exclusion of MA coverage for persons incarcerated in detention centers, see 75 Op. Att'y Gen. 1101 (1990), the County argues that pretrial detainees are not eligible for MA coverage. As set forth in the Attorney General's advisory opinion, the federal Medicaid program excludes inmates of public institutions from coverage. See 75 Op. Att'y Gen. at 1102. Under the federal system, Medicaid is denied to a person who is an inmate of a public institution, which is defined as "a person who is living in a public institution." 42 C.F.R. § 435.1009 (1993). Under the federal regulations, a person who might otherwise fall within the definition of an inmate is not considered an inmate if:

"(a) He is in a public educational or vocational training institution for purposes of securing education or vocational training; or

(b) *He is in a public institution for a temporary period pending other arrangements appropriate to his needs.*" (Emphasis added).

*Id.* This second exception, the Attorney General and the County assert, does not apply to pretrial detainees because "there is nothing 'inappropriate' in detaining those for whom no bail has been set or who cannot meet bail." 75 Op. Att'y Gen. at 1103. As set forth in the Attorney General's opinion, Maryland's MA program excludes inmates of public institutions and follows federal Medicaid law in defining this term. 75 Op. Att'y Gen. at 1103–05; Code of Maryland Regulations (COMAR) 10.09.24.05G (1993); § 15–113. Additionally, the Attorney General concludes, because § 15–113(b)(1) conditions DHMH's responsibility for an inmate's medical costs on the

inmate's eligibility for federal Medicaid benefits, Maryland law follows the federal law and excludes benefits for pretrial detainees. 75 Op. Att'y Gen. at 1103.

■ We note that in effect, the Attorney General's opinion, relied on by the County, is not interpreting state law, but rather is determining who is an "inmate of a public institution," and more specifically, is determining the meaning of the exception for an inmate "in a public institution for a temporary period pending other arrangements appropriate to his needs" under *federal* Medicaid regulations. As the Attorney General sets forth, § 15–113 provides that DHMH must pay for the medical care costs of an inmate of a public institution "[i]f an inmate of a public institution is eligible for federally funded Medicaid benefits." *See* § 15–113(b). Furthermore, § 15–113 provides that " 'inmate of a public institution' " is to be defined according to the federal definition. *See* § 15–113(a). Thus, the Attorney General's opinion in fact constitutes an analysis of the meaning of a *federal* regulation and a consideration of the impact of that regulation on state law. We note that the Attorney General's opinions on issues of state law, while not binding, are "entitled to careful consideration and serve as important guides to those charged with the administration of the law." *Mitchell v. Register of Wills*, 227 Md. 305, 310, 176 A.2d 763, 766 (1962). *See also Montgomery County v. Atlantic Guns, Inc.*, 302 Md. 540, 548, 489 A.2d 1114, 1118 (1985); *Auto. Trade Ass'n v. Harold Folk Enter.*, 301 Md. 642, 662, 484 A.2d 612, 622 (1984). Nonetheless, in the instant case, we disagree with the Attorney General's interpretation of the applicable *federal* law and find the Attorney General's interpretation of the federal regulation to be unpersuasive in the absence. of any definitive federal authority supporting the Attorney General's interpretation.

The County further contends that the exclusion of pretrial detainees from MA coverage is not violative of equal protection or due process. It asserts that Brown was not denied due process because he had the opportunity to establish his inability to pay the medical bills at trial, but failed to do so. Additionally, the County maintains that excluding Brown from

MA coverage under Art. 87, § 46, despite the fact that he would be eligible for MA benefits had he been able to post bail, does not violate equal protection because the classification drawn by Art. 87, § 46 "is rationally related to a legitimate state interest." *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985). In essence, the County asserts, the statute treats all detainees equally because they "[a]ll are personally responsible for their medical expenses, irrespective of insurance coverage."

■ The issue of a government entity's ability to hold an indigent pretrial detainee personally liable for the costs of medical treatment while incarcerated is one of first impression in this State. Neither party has cited, and we have not found any case addressing this precise issue.[4] Thus, we have found

---

**4.** Other jurisdictions have addressed the issue of allocation of liability between two or more parties other than the indigent pretrial detainee. *See Harford County v. University*, 318 Md. 525, 530–31 n. 2, 569 A.2d 649, 652 n. 2 (1990); *St. Alphonsus Medical Center v. Killeen*, 124 Idaho 221, 858 P.2d 760 (Ct.App.1992) (allocation of medical costs as between county of detainee's residence and county of custody); *Harrison Memorial Hosp. v. Kitsap County*, 103 Wash.2d 887, 700 P.2d 732 (1985) (allocation of medical costs as between hospital and county); *Metro. Dade Cty. v. P.L. Dodge Foundations*, 509 So.2d 1170 (Fla.Dist.Ct.App. 1987) (allocation of medical costs as between hospital and county). *See also Our Lady of Lourdes v. Franklin County*, 120 Wash.2d 439, 842 P.2d 956 (1993) (discussing the allocation of costs for indigent county jail inmates as between the treating hospital, the county, and the Department of Social and Health Services). In this context, some jurisdictions have also addressed the governmental entity's responsibility to pay for the medical expenses for only those prisoners who are found to be indigent and have no other source of coverage or benefits. *See Metro. Dade Cty., supra; Dodge City Med. Center v. Bd. of Cty. Com'rs*, 6 Kan.App.2d 731, 634 P.2d 163 (1981); *Mt. Carmel Med. Center v. Bd. of Cty. Com'rs*, 1 Kan.App.2d 374, 566 P.2d 384 (1977). These cases either involve differing state statutory schemes from that applicable in the present case or were resolved based on prior case law in that jurisdiction. Additionally, these cases are not instructive on the issue of allocation of liability as between a government entity and the pretrial detainee individually. Finally, because our determination of the issue before us rests on our interpretation of the benefits conferred on a pretrial detainee, regardless of indigence, we do not find those cases addressing a requirement of proof of indigence before a govern-

no authority interpreting the relevant provisions of the federal statute in question. In *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), the Supreme Court considered a suit by Massachusetts General Hospital against the City of Revere to recover the medical costs of a suspect shot while being apprehended by the police. The Court held that the City of Revere fulfilled its constitutional obligations to the suspect by ensuring that he received the necessary medical treatment, *City of Revere*, 463 U.S. at 245, 103 S.Ct. at 2983, 77 L.Ed.2d at 611, and that "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law." *Id. See also Smith v. Linn County*, 342 N.W.2d 861, 863 (Iowa 1984) (noting that the allocation of the cost of medical treatment between the prisoner and the responsible governmental entity is a matter of state law). Thus, *City of Revere* established that a government entity must provide necessary medical care to those detained by the entity and that "[i]f ... the governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay." 463 U.S. at 245, 103 S.Ct. at 2983, 77 L.Ed.2d at 611. *City of Revere* did not, however, hold that a governmental entity could look first to the detainee personally for reimbursement without regard to available sources of reimbursement, such as Medicaid. In the instant case, there has been no contention that the County failed to provide Brown with needed medical treatment. The only issue is whether Brown can be held personally liable for the costs of his medical treatment without the County first seeking reimbursement from MA.

Brown points to *Harford County v. University*, 318 Md. 525, 569 A.2d 649 (1990) as establishing that, under Art. 87, § 46(c), the County must pay medical costs for an indigent

---

mental entity is required to pay for medical costs to be persuasive in the resolution of the instant case.

pretrial detainee and that before costs can be assessed against an individual, the County must determine that the person is not indigent. We disagree.

In *Harford County,* James T. Thompson, an indigent, was injured in a gun battle when Aberdeen police officers attempted to arrest him in connection with an alleged rape. Thompson was taken to the Shock Trauma Center at the University of Maryland Hospital in Baltimore for treatment of his injuries. The hospital subsequently sued the County to recover the unpaid costs of Thompson's treatment. In response, the County argued that it was not responsible for the costs of Thompson's treatment until the date on which he was committed to the custody of the sheriff by the district court commissioner.

In assessing the County's responsibility for medical costs, we considered the language of an old version of Art. 87, § 46 which provided:

" 'He [the sheriff] shall provide food and board for all prisoners committed to his charge and such food and other articles for the comfort of sick prisoners as the physician attending such prisoners may deem necessary, the expense of which shall be paid by the county or Baltimore City.' "

*Harford County,* 318 Md. at 529, 569 A.2d at 651 (quoting Md.Code (1957, 1979 Repl.Vol.), Art. 87, § 46). We held that under this older version of § 46, "the sheriff's duty to provide medical care ... is broad enough to require that [the sheriff] bear the cost of treatment which Thompson received at University Hospital" and that the fact that Thompson had not yet been presented to a judicial officer on the charges for which he was arrested did not preclude the imposition of these costs on the sheriff. *Harford County,* 318 Md. at 530, 569 A.2d at 651. We note, however, that Art. 87, § 46 was amended in 1987 and 1988, subsequent to the *Harford County* decision, to add the reimbursement provisions at issue in the instant case. *See* Chapter 628 of the Acts of 1987; Ch. 591 of the Acts of 1988; Md.Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Art. 87, § 46. Thus, in *Harford County* we did not consider the

statute's current reimbursement provisions contained in § 46(c), and that case cannot be utilized to support Brown's position. We neither held in *Harford County* that the County is de facto responsible for the costs of medical treatment for an indigent pretrial detainee, nor made any finding that before costs could be assessed against a pretrial detainee, his or her ability to pay must first be determined. Because we have never before addressed this issue, we must therefore look to an interpretation of the relevant statutory provisions contained in both the federal Medicaid system and our State's MA program in order to determine Brown's personal liability for the costs of his medical care.

In interpreting the meaning of the applicable statutes, we first take note of our discussion of the principles of statutory construction contained in *Frost v. State,* 336 Md. 125, 647 A.2d 106 (1994), where we said:

> "In analyzing a statute, we must always be cognizant of the fundamental principle that statutory construction is approached from a ' "commensensical" ' perspective. Thus, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense. Furthermore, we do not read statutory language 'in isolation or out of context [but construe it] in light of the legislature's general purpose and in the context of the statute as a whole.' In *GEICO v. Insurance Comm'r,* 332 Md. 124, 630 A.2d 713 (1993), we explained that '[c]ontext may include related statutes, pertinent legislative history and "other material that fairly bears on the fundamental issue of legislative purpose or goal...." ' 332 Md. at 132, 630 A.2d at 717 (quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 632–33 (1987))." (Citations omitted).

336 Md. at 137–38, 647 A.2d at 112.

We do not believe that the Attorney General's and the County's interpretations of federal law as excluding medical assistance coverage for pretrial detainees follows a common sense approach to the language of the applicable statutes. First, the language of the federal regulation does not appear

to clearly exclude pretrial detainees from coverage. The County, relying on the Attorney General's advisory opinion, argues first that the federal Medicaid regulations, by prohibiting coverage for "inmates of public institutions," exclude coverage for pretrial detainees and that because § 15–113 of the Health–General Article follows the federal definition, it too excludes pretrial detainees. We note that in his advisory opinion, the Attorney General provides no federal authority to support his contention that 42 C.F.R. § 435.1009, which authorizes coverage for an inmate who is "in a public institution for a temporary period pending other arrangements appropriate to his needs" is not applicable to pretrial detainees. *See* 75 Op. Att'y Gen. at 1103. The Attorney General states only that, under Maryland law, there is nothing "inappropriate" about detaining those who cannot make bail.[5] We find this argument unpersuasive. The language of 42 C.F.R. § 435.1009 does not require that an inmate's temporary stay in a public institution be inappropriate; it requires only that the stay is temporary pending other appropriate arrangements. In the instant case, Brown was in jail because he was not able to post bond. He was therefore incarcerated for a temporary period until he was either able to post bond or until the disposition of the criminal charges against him. The disposition of the criminal charges would determine which of two arrangements would be appropriate to his needs. He would either need to be punished by a specific sentence of incarceration or need to be released because incarceration is not necessary or he is not guilty of the criminal charges. Thus, Brown appears to clearly fall within 42 C.F.R. § 435.1009(b)'s exclusion and is "in a public institution for a

---

5. The Attorney General cites only Md.Code (1957, 1987 Repl.Vol.), Art. 27, § 616½ and Maryland Rule 4–216(a) to support his contention that, because there is nothing "inappropriate" about detaining those who cannot meet bail or for whom no bail has been set, pretrial detainees are excluded from MA coverage. The provisions cited by the Attorney General, however, concern the setting of bail generally and in no way suggest that pretrial detainees are not "in a public institution for a temporary period pending other arrangements appropriate to his needs."

temporary period pending other arrangements appropriate to his needs."

■ We have found no authority to support the Attorney General's contention that Medicaid coverage for an inmate "in a public institution for a temporary period pending other arrangements appropriate to his needs" is not intended to be applicable to pretrial detainees. We find it unlikely that the federal regulation would intend that those who are indigent and eligible for Medicaid would lose those benefits simply because they are unable to post bail pending the disposition of the criminal charges against them. Given that there is no persuasive authority holding that pretrial detainees are excluded from Medicaid coverage under federal law, we reject the County's argument that § 15–113 of the Health–General Article, by relying on the federal definition of "inmate of a public institution" and qualifying DHMH's obligation to pay for medical care on eligibility for Medicaid, excludes MA coverage for pretrial detainees.[6]

We further find nothing in Art. 87, § 46(c) which indicates that the County may hold Brown directly liable for the costs of his medical treatment instead of seeking reimbursement under MA. The County points to the legislative history of Art. 87, § 46 to support its argument that it may look to Brown personally for reimbursement of medical costs without first

---

**6.** Judge Rodowsky in his dissent constructs a truly remarkable series of inferences built one on top of another, and from a mere request for an Attorney General's opinion by the Baltimore City Solicitor, he infers the manner in which this regulation is being interpreted by states throughout the country. He begins with an assumption that "[t]hose possessing the most basic acquaintance with current events" will recognize, based on the fact that the Baltimore City Solicitor sought an Attorney General's opinion on the issue, that there was a "clear implication" that prior to 1990 the federal and Maryland interpretation of Medicaid excluded reimbursement for pretrial detainees. Going further, Judge Rodowsky finds that, if there was a contrary construction, "the word would rapidly spread from state to state." He therefore concludes there is a uniform interpretation throughout the country contrary to the majority interpretation. Thus, based on a request for an Attorney General's opinion by the Baltimore City Solicitor, Judge Rodowsky divines how the regulation is being uniformly construed throughout the United States.

seeking reimbursement from MA for those costs incurred while Brown may have been eligible for MA benefits. The County first points to the 1987 amendments to Art. 87, § 46, which had added the following:

> "In *Calvert, Carroll, Charles, or St. Mary's Counties,* sick, injured, or disabled prisoners shall be responsible for the payment of all medical care, and shall furnish the sheriff with the following information *in order to reimburse the County Commissioners the cost of medical care....*" (Emphasis added).

Ch. 628 of the Acts of 1987. The preamble to the amendments stated that the amendments were "[f]or the purpose of authorizing the sheriffs of [the applicable] counties to collect the cost of any necessary medical care for a sick prisoner from any health insurance, group health plan, or prepaid medical care coverage under which the prisoner is insured...." Ch. 628 of the Acts of 1987 (emphasis omitted). Thus, the County admits that under the 1987 amendments, "the Legislature intended for insurance to be a, and perhaps only, source of reimbursement." However, the County points to the amendments to the statute made in 1988 as evidencing a different purpose. These amendments deleted some of the language from the 1987 amendments and provided:

> "Sick, injured, or disabled prisoners shall be responsible for reimbursing the county or Baltimore City for the payment of all medical care, and shall furnish the sheriff with the following information...."

Ch. 591 of the Acts of 1988, at 4052. Further, the preamble to the amendment stated simply that the amendment was "[f]or the purpose of ... requiring prisoners confined to local detention facilities to reimburse the county or Baltimore City for medical expenses and to provide the sheriff with certain information regarding health insurance and eligibility for benefits under the Maryland Medical Assistance Program...." Ch. 591 of the Acts of 1988, at 4049–50. The County argues that the "1988 legislative history eliminates any doubt that the Legislature intended prisoners to be personally responsible for medical expenses incurred on their behalf. The language

of the law as enacted leads to the same conclusion." We disagree.

We find the County's characterization of the legislative history of Art. 87, § 46 to be unpersuasive in several respects. First, while the County argues that the 1988 amendments allowed counties to pursue prisoners personally for reimbursement of medical expenses, the County fails to take note of another aspect of the 1988 amendments, adding § 46(d), which provides:

> "The liability for payment for medical care described under subsection (c) of this section may not be construed as requiring payment by any person or entity, except by a prisoner personally *or through coverage or benefits* described under subsection (c) of this section." (Emphasis added).

Ch. 591 of the Acts of 1988, at 4052. The Attorney General construed the 1988 amendments as establishing "that when a prisoner is insured or entitled to medical assistance, that coverage will be used to reimburse the cost of the prisoner's care." 75 Op. Att'y Gen. at 1105. Thus, contrary to the County's assertion, the 1988 amendments did not clearly provide that prisoners could be held personally liable for the costs of medical treatment without regard to insurance coverage or other benefits for which they might be eligible.

The County additionally fails to take note of the 1991 amendments to Art. 87, § 46(c). *See* Ch. 59 of the Acts of 1991, at 1503–04. The 1991 amendment added the language contained within the brackets:

> "(c) Sick, injured, or disabled prisoners [including those committed to the Commissioner of Pre–Trial Detention Services] shall be responsible for reimbursing the county [or the State, *as appropriate*] for the payment of all medical care, and shall furnish the sheriff with the following information:
>
> (1) The existence of any health insurance, group health plan, or prepaid medical care coverage under which the prisoner is insured;

(2) The eligibility for benefits under the Maryland Medical Assistance Program to which the prisoner is entitled;

(3) The name and address of the third party payor; and

(4) The policy or other identifying number." (Brackets and emphasis added).

Ch. 59 of the Acts of 1991, at 1503–04. By requiring that the prisoner provide the sheriff with pertinent information regarding insurance and MA coverage, this language suggests that it is "appropriate" for a prisoner to reimburse the county or State only when payment is not available from other sources.

 We find that the language in Art. 87, § 46(c) does not appear to hold prisoners unconditionally and personally liable for the costs of medical treatment, but rather requires reimbursement "as appropriate." Further, by providing in Art. 87, § 46(d) that subsection (c) "may not be construed as requiring payment by any person or entity, except by a prisoner personally *or* through coverage or benefits described under subsection (c) of this section," the language of the statute logically supports Brown's interpretation of the statute as requiring the County to look to applicable available insurance and MA coverage before pursuing a prisoner personally for the costs of medical care. Given that we find no support for the County's argument that pretrial detainees are precluded from receiving MA benefits, we hold that, under Art. 87, § 46, in providing the necessary medical care required by a pretrial detainee, in the absence of clear indication that pretrial detainees are ineligible for MA coverage under federal law, the County should first have attempted to seek reimbursement from DHMH under MA. Because Maryland's statute relies on the federal regulations' definition of "inmate of a public institution" to determine benefits for MA, DHMH may only deny reimbursement to the County for the costs of medical treatment provided to an indigent pretrial detainee who was eligible for benefits prior to incarceration when or if the federal regulation on which Maryland relies has been clarified to exclude benefits for pretrial detainees.

Under Art. 87, § 46(c), Brown was required to provide the Sheriff with information regarding insurance coverage and eligibility for MA benefits. Brown complied with his duties under the statute and informed personnel at the Detention Center that he was eligible for MA benefits at the time of incarceration and that his MA card was in his wallet, which had been confiscated by the County. The County therefore had all the relevant information necessary to seek reimbursement and was the only party in a position to do so. While the MA regulations provide for payments to be made to the provider of health care, they specify that "[t]he [p]rogram will make no direct payment to recipients [of health care]." CO-MAR 10.09.36.04(D). In the instant case, based on our interpretation of the federal regulation, Brown was eligible for MA benefits for the medical treatment he received on April 29, 1991 and May 3, 1991. Where, as here, the prisoner has complied with Art. 87, § 46(c) by providing information regarding eligibility for insurance and other benefits, the County must make reasonable efforts to seek reimbursement for these costs from DHMH.[7] Only if the federal regulation is ultimately construed, contrary to our reading of the regulation, to deny coverage for pretrial detainees, may DHMH deny reimbursement to the County. We do note, however, that Brown's MA eligibility had expired at the time he received dental treatment, and he acknowledges that "the record does not disclose evidence that reimbursement was available for the dental bill incurred in June, 1991." The County, therefore, may seek reimbursement for the costs of this treatment, furnished after Brown lost his MA eligibility, directly from Brown.

---

7. We note that the deadline for submission to DHMH for reimbursement has expired. *See* 42 C.F.R. § 447.45(d)(1) (1995) (requiring the *Medicaid agency to submit claims no later than 12 months from the date of service);* COMAR 10.09.36.06 (providing that the Department of Health and Mental Hygiene (DHMH) will not provide reimbursement for claims received more than 9 months from the date of service). Having missed the deadlines for submission for reimbursement, the County cannot now turn to Brown for reimbursement of costs which may otherwise have been paid by DHMH.

### III.

In permitting the County to seek reimbursement directly from Brown for the costs of his dental care, we note that there is nothing violative of equal protection in seeking reimbursement from an inmate or pretrial detainee for the costs of required medical treatment should other sources be unavailable. That is, should a prisoner have no insurance or MA coverage, there is no equal protection violation in pursuing reimbursement from the inmate or pretrial detainee for the costs of medical care. We also note that there is no constitutional prohibition against seeking and obtaining a judgment against an indigent who has received medical treatment. Brown has cited no case, nor have we found a case, establishing an indigent's constitutional right to refuse to reimburse the government for furnished medical care.

The fact that there is no constitutional infirmity in seeking reimbursement from an inmate or pretrial detainee for costs incurred on his or her behalf where no other source of reimbursement is available is well supported by the Supreme Court's analysis of other reimbursement statutes. *See Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). *See also* George L. Blum, Annotation, *Validity, Construction, and Application of State Statute Requiring Inmate to Reimburse Government for Expense of Incarceration*, 13 A.L.R. 5th 872 (1993) (discussing state reimbursement statutes held valid under equal protection, due process, double jeopardy, and other constitutional challenges). In *Rinaldi*, the Supreme Court discussed the test for determining whether a reimbursement statute is violative of the Equal Protection Clause. The Court considered the constitutionality of a statute which required confined inmates who unsuccessfully appealed their convictions to repay to the state the costs of transcripts provided to the inmate for use in the appeal process. The statute applied only to unsuccessful inmates who were institutionalized and not to those put on probation or receiving a suspended sentence. In

setting forth the applicable equal protection analysis, the Court noted:

> "The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute necessarily apply equally to all persons.... Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'"

*Rinaldi*, 384 U.S. at 308–09, 86 S.Ct. at 1499–00, 16 L.Ed.2d at 580 (citation omitted). The Court stated that "[w]e may assume that a State can validly provide for recoupment of the cost of appeals from those who later become financially able to pay." *Rinaldi*, 384 U.S. at 311, 86 S.Ct. at 1501, 16 L.Ed.2d at 581. Nonetheless, the Court held the statute unconstitutional:

> "To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions ... is to make an invidious discrimination.... There is no defensible interest served by focusing on that distinction as a classifying feature in a reimbursement statute, since it bears no relationship whatever to the purpose of the repayment provision.
>
> \* \* \* \* \* \*
>
> [T]he present statutory classification is no less vulnerable under the Equal Protection Clause when viewed in relation [to the purported function of deterring frivolous appeals]. By imposing a financial obligation only upon inmates of institutions, the statute inevitably burdens many whose appeals, though unsuccessful, were not frivolous, and leaves untouched many whose appeals may have been frivolous indeed."

*Rinaldi*, 384 U.S. at 309–10, 86 S.Ct. at 1500, 16 L.Ed.2d at 580–81.

In *James*, the Supreme Court considered the constitutionality of a Kansas statute which enabled the state to recoup counsel and other legal defense fees incurred when counsel was provided to indigent defendants. The statute allowed the state to obtain a judgment for the costs against the indigent and permitted recovery of the judgment by garnishment or any other procedure provided by the state's civil procedure code. The statute, however, did not provide for most of the exemptions from the enforcement of a judgment permitted for other judgment debtors. Recognizing the *Rinaldi* Court's assumption that government entities could seek reimbursement from those for whose benefit money was expended, the *James* Court noted "that state recoupment statutes may betoken legitimate state interests." *James*, 407 U.S. at 141, 92 S.Ct. at 2035, 32 L.Ed.2d at 611. The Court nonetheless held the statute unconstitutional because, by precluding the exemptions for repayment permitted to other judgment debtors of the state, the statute resulted in unconstitutional discrimination against the indigent defendant who had been provided counsel. *James*, 407 U.S. at 140–41, 92 S.Ct. at 2034, 32 L.Ed.2d at 610. The Court thus held that despite the legitimate interests inherent in the state's recoupment statute, "these interests are not thwarted by requiring more even treatment of indigent criminal defendants with other classes of debtors...." *James*, 407 U.S. at 141, 92 S.Ct. at 2035, 32 L.Ed.2d at 611.

Similarly, in *Fuller*, the Supreme Court addressed the constitutionality of an Oregon recoupment statute which permitted the state to seek reimbursement of defense costs from convicted defendants who, while indigent at the time of the criminal proceedings against them, later acquired the means to repay the costs of their defense. Repayment of costs was not a mandatory imposition, and was only applied to convicted defendants who were or would later be financially able to provide reimbursement. *Fuller*, 417 U.S. at 45, 94 S.Ct. at 2120–21, 40 L.Ed.2d at 650. A convicted person obligated to repay could petition the court for remission of the repayment based on manifest hardship to the defendant or defendant's

family. *Fuller*, 417 U.S. at 45–46, 94 S.Ct. at 2121, 40 L.Ed.2d at 650. Citing the decision in *James*, the Supreme Court held that the Oregon statute was not violative of the Equal Protection Clause. *Fuller*, 417 U.S. at 46–48, 94 S.Ct. at 2121–22, 40 L.Ed.2d at 650–51. The Court noted that, unlike the statute at issue in *James*, the Oregon statute did not entail the denial of the same exemptions as allowed other judgment debtors. *Fuller*, 417 U.S. at 47, 94 S.Ct. at 2121, 40 L.Ed.2d at 651. Further, the *Fuller* Court held that, unlike the invidious classification made by the statute at issue in *Rinaldi*, the Oregon statute's distinction between requiring payment of those who were convicted and those who, after the imposition of a trial, were ultimately not convicted, was a rational one. *Fuller*, 417 U.S. at 49–50, 94 S.Ct. at 2122–23, 40 L.Ed.2d at 652–53. The Court held that "[t]his legislative decision reflects no more than an effort to achieve elemental fairness and is a far cry from the kind of invidious discrimination that the Equal Protection Clause condemns." *Fuller*, 417 U.S. at 50, 94 S.Ct. at 2123, 40 L.Ed.2d at 652–53.

We find the reasoning of *Rinaldi*, *James*, and *Fuller* to be particularly applicable to the issues presented in the instant case. We find nothing unconstitutional in Art. 87, § 46's aim of seeking reimbursement from an inmate or pretrial detainee for the costs of medical care incurred by the state. The statute has the constitutional purpose of seeking to replenish the coffers of the state and looks to both those who are indigent and those who are financially able to reimburse the state for costs incurred on their behalf. Although the state may in fact never be able to collect on a judgment obtained against an indigent, they may wish to pursue the judgment in the event that an indigent inmate or pretrial detainee may later obtain the ability to pay such a judgment.

Any potential constitutional infirmity in the County's position comes not from its desire to seek reimbursement from an indigent pretrial detainee, but rather from its position that if a pretrial detainee is eligible for MA benefits prior to incarceration, he or she will remain eligible for benefits only if they are financially able to post bail. In the instant case, there is no

dispute that Brown would have been eligible for MA benefits for all of his medical care (except his dental treatment) if he had the ability to post bail. Therefore, under the County's interpretation, an indigent detainee would therefore lose his or her MA benefits simply because of the inability to make bail. We need not reach the issue whether such an interpretation could exemplify the kind of invidious discrimination found in the statutes in *Rinaldi* and *James*, although one might question the rational purpose behind excluding MA benefits for those pretrial detainees who are indigent and unable to post bail.[8]

 We further hold that the County cannot contravene its responsibility to seek reimbursement from available sources under Art. 87, § 46 by obtaining an inmate's or pretrial detainee's signature on a "Health Services Consent Form," as the County did in the present case. As we have made clear, an inmate or pretrial detainee may ultimately be responsible for the costs of medical treatment he or she receives while in custody. This does not mean, however, that the County or other state entity may disregard available sources of reimbursement in seeking to recoup the costs it incurs on behalf of an inmate or pretrial detainee.

## IV.

 Brown has also argued that the imposition of a judgment for the costs of his medical treatment violates due

---

8. The Attorney General found that the exclusion of pretrial detainees from MA coverage did not violate equal protection. *See* 75 Op. Att'y Gen. 1101 (1990). The Attorney General stated that the rationale for the exclusion of benefits under federal Medicaid was " 'to insure that Medicaid funds are not used to finance care which traditionally has been the responsibility of State and local governments.' " 75 Op. Att'y Gen. at 1108 (quoting 50 Fed.Reg. 13196 (1985)). The Attorney General argued that § 15–113 of the Health–General Article contained a similar rationale by providing that DHMH would be reimbursed for the nonfederal cost of medical care by either the State or local authority that is responsible for the inmate. *See* § 15–113(c). This argument may not provide a rational basis for excluding pretrial detainees who are unable to make bail from receiving the MA benefits to which they would otherwise be entitled had they been able to make bail.

process because the Detention Center did not first determine whether he had the ability to pay. We find Brown's argument on this point to be unpersuasive. First, the County provided Brown with all necessary medical treatment as required by law. Second, as we have set forth above, the County may seek reimbursement for the costs of this medical treatment from applicable insurance and MA benefits or from Brown should other sources be unavailable. Third, the County may obtain a judgment against an indigent inmate or pretrial detainee in the hope that the indigent may later obtain the ability to satisfy the judgment. Finally, Brown presented no evidence regarding his inability to pay the costs of his medical treatment. Thus, we find that due process has not been violated.

## V.

As we have already noted, the County had taken possession of Brown's MA card and, having paid the health insurance providers, was the only party who could properly seek reimbursement from DHMH. Thus, we hold that, where the County has placed itself in such a position that it is the only party able to seek reimbursement under MA from DHMH, absent a binding federal determination that federal law excludes pretrial detainees from obtaining Medicaid benefits, the County must make reasonable efforts to seek reimbursement where the pretrial detainee may be eligible for benefits under MA. We further find no indication in the language or legislative history of the applicable federal and state statutes and regulations that would indicate that pretrial detainees are ineligible for MA benefits.

In conclusion, we hold that for those medical bills incurred while Brown may have been eligible for MA benefits, the County should first have sought reimbursement from DHMH before pursuing Brown for reimbursement. We further hold that until the language of the federal regulation has been conclusively determined to exclude benefits for pretrial detainees, DHMH may not deny reimbursement to the County for the costs of medical treatment provided to indigent pretrial

detainees who were eligible for MA benefits prior to incarceration. As Brown was not eligible for MA when he received dental treatment, the County did not violate Brown's rights to equal protection or due process in seeking reimbursement for the costs of dental treatment from Brown.

*JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED. COSTS TO BE PAID BY RESPONDENT.*

RODOWSKY, Judge, dissenting.

I respectfully dissent because I agree with the conclusion reached by the Attorney General of Maryland in 75 Op. Att'y Gen. 1101 (1990) [Opinion No. 90–034 (July 5, 1990) ]. There the Attorney General ruled that federal Medicaid benefits are not payable to detainees, whether pretrial, during trial, postverdict, or post-judgment of conviction. Because there is no longer even partial federal reimbursement for inmate medical care, federal reimbursement cannot be a condition precedent to a detainee's statutory obligation to make restitution.

It may be helpful to the reader if the pieces of this jigsaw puzzle are arranged in chronological order.

1825. Chapter 41 of the Acts of 1825 required a sheriff to provide "food and other articles for the comfort of sick persons confined in the jails of this state, as the physician appointed to attend on prisoners in jail shall deem necessary ... [and t]hat the sheriffs aforesaid shall be entitled to charge their respective counties with the sum or sums of money they may expend under the provisions of this act. . . ." 1825 Md. Laws at 27. This is now Maryland Code (1957, 1991 Repl.Vol., 1994 Cum.Supp.), Art. 87, § 46(b).

1965. The Medicaid program was enacted by Congress as Title XIX of the Social Security Act, now 42 U.S.C.A. §§ 1396 *et seq.* (1992 & 1995 Supp.). The legislation provided for payment of part or all of the costs of certain care and services, except "any such payments with respect to care or services for any individual who is an inmate of a public institution (except as a patient in a medical institution)." 42 U.S.C.

§ 1396d(a)(A). "[I]nmate of a public institution" was not a statutorily defined term. Regulations, however, define the quoted phrase to mean

"a person who is living in a public institution. An individual is not considered an inmate if—

. . . .

"(b) He is in a public institution for a temporary period pending other arrangements appropriate to his needs."

42 C.F.R. § 435.1009.

Further, prior to May 3, 1985, 42 C.F.R. § 435.1008 provided that federal financial participation (FFP) "was available for noninstitutional services furnished during the month in which the individual became an inmate or patient and the last month of institutionalization. . . ." 50 Fed.Reg. 13196, 13196 (Apr. 3, 1985).

<u>1980</u>. The General Assembly, by Chapter 324 by the Acts of 1980, amended former Art. 43, Title, "Health," by adding § 42-O. The then new section read:

"If an individual who is an inmate of a public institution is eligible for federally funded medicaid benefits, the Department of Health and Mental Hygiene, Medical Assistance Administration, shall, in accordance with applicable program rules, pay the custodial authority for medical care furnished the individual in the month he or she became an inmate of a public institution; in the case of a State authority responsible for an inmate, that authority shall reimburse the Department of Health and Mental Hygiene for the nonfederal cost of medical care; and in the case of a local authority responsible for an inmate, the local authority shall reimburse the Department of Health and Mental Hygiene for the nonfederal cost of medical care. 'Public institution' and 'inmate of a public institution' are as defined in Title 42, § 435.1009 of the Code of Federal Regulations, 1978 Edition, as amended."

Md.Code (1957, 1980 Repl.Vol., 1981 Cum.Supp.), Art. 43, § 42-O.

1982. By Chapter 21 of the Acts of 1982 the General Assembly enacted the Health General Article as part of the Code revision project. Former Art. 43, § 42-O was codified as § 15-113 of the Health General Article. The revised section continues to date to limit payment by the Department of Health and Mental Hygiene (DHMH) to services for those inmates of a public institution who are "eligible for federally funded Medicaid benefits" and then only for "any medical care that is provided to the inmate during the month when the individual became an inmate." Md.Code (1982, 1994 Repl. Vol.), § 15-113(b)(1) of the Health General Article (HG).

1985. The Health Care Financing Administration of the United States Department of Health and Human Services amended 42 C.F.R. § 435.1008(a) expressly to provide that "FFP is not available in expenditures for services provided to—(1) [i]ndividuals who are inmates of public institutions as defined in § 435.1009." 50 Fed.Reg. at 13199. The earlier form of the regulation, allowing FFP for the first and last months of confinement of inmates of public institutions, had been based "on a judgment that such an arrangement would be more administratively convenient for States." Id. at 13196. The federal agency decided to change its regulation to "ensure that Medicaid funds are not used to finance care for institutionalized individuals who have traditionally been the responsibility of State and local governments." Id.

1987. The General Assembly, by Chapter 628 of the Acts of 1987, amended Art. 87, "Sheriffs," § 46 to provide that in four counties, including Carroll, "sick ... prisoners shall be responsible for the payment of all medical care," and they are to furnish the sheriff certain information concerning "any health insurance, group health plan, or prepaid medical care coverage...." Md.Code (1957, 1985 Repl.Vol., 1987 Cum.Supp.), Art. 87, § 46(b)(1).

1988. The General Assembly, by Chapter 591 of the Acts of 1988, amended Art. 87, § 46 to make of statewide application the obligation of a sick prisoner in a jail to reimburse "the county or Baltimore City for the payment of all medical

care...." Md.Code (1957, 1985 Repl.Vol., 1988 Cum.Supp.), Art. 87, § 46(c). The General Assembly also added to the insurance information that the prisoner is to furnish information concerning "[t]he eligibility for benefits under the Maryland Medical Assistance Program to which the prisoner is entitled." *Id.* § 46(c)(2).

1990. The City Solicitor of Baltimore City requested an opinion from the Attorney General of Maryland "on whether the Maryland Medical Assistance Program may lawfully exclude prisoners from its coverage." 75 Op. Att'y Gen. at 1101. That program included two parts, one of which was Medicaid.[1] The Attorney General opined that jail detainees were ineligible for Medicaid payments because they were inmates of a public institution who did not fall within the second exception in 42 C.F.R. § 435.1009. This was because

"[t]he second exception, for those temporarily awaiting appropriate arrangements, also does not describe prisoners, even those incarcerated while awaiting trial. Instead, it appears directed at persons who would not have been housed in a public institution had a more appropriate placement been available earlier. This description does not fit persons imprisoned in detention centers while awaiting trial. Under State law, there is nothing 'inappropriate' in detaining those for whom no bail has been set or who cannot meet bail."

75 Op. Att'y Gen. at 1103.

1991. The General Assembly, by Chapter 59 of the Acts of 1991, again amended Art. 87, § 46. This amendment was incidental to a principal purpose of Chapter 59 of effecting a State takeover of the Baltimore City Jail. Chapter 59 created the Division of Pretrial Detention and Services in the Department of Public Safety and Correctional Services. The Divi-

---

1. The other part of the program was Medical Assistance—State–Only Eligibility (MASO). It was wholly State funded. MASO was terminated by emergency regulations effective December 31, 1992 and by final regulations effective June 1, 1993. See 19 Md.Reg. 2198 (Dec. 11, 1992) and 20 Md.Reg. 852 (May 14, 1993).

sion is headed by a Commissioner of Pretrial Detention and Services, and the Division includes the Baltimore City Detention Center. *See* Md.Code (1957, 1990 Repl.Vol., 1991 Cum. Supp.), Art. 41, §§ 4–1401 through 4–1414.

As part of the restructuring, Art. 87, § 46(c) was amended to read as follows (capitals identify new matter in relation to then existing law and brackets contain matter deleted from then existing law):

"(c) Sick, injured, or disabled prisoners INCLUDING THOSE COMMITTED TO THE COMMISSIONER OF PRE–TRIAL DETENTION SERVICES shall be responsible for reimbursing the county [or Baltimore City] OR THE STATE, AS APPROPRIATE for the payment of all medical care, and shall furnish the sheriff with the following information:

. . . .

"(2) The eligibility for benefits under the Maryland Medical Assistance Program to which the prisoner is entitled. . . ."

1991 Md. Laws at 1503.

1994. By Chapter 586 of the Acts of 1994 the General Assembly required "the governing body of each county and, in the case of Baltimore City, the Department of Public Safety and Correctional Services, [to] set a reasonable fee not to exceed $4 for each visit by an inmate to an institutional medical unit or noninstitutional physician, dentist, or optometrist." Md.Code (1957, 1991 Repl.Vol., 1994 Cum.Supp.), Art. 87, § 46(d)(2)(i). The General Assembly has expressly stated that this subsection is in addition to the reimbursement obligation for "payment of all medical care" imposed by subsection (c). *Id.* § 46(d)(2)(i). The surcharge may be deducted from the detainee's account at the jail. *Id.* § 46(d)(2)(ii). Under subsection (d)(1) the surcharge essentially applies only to inmate initiated visits for medical attention.

The foregoing chronological review supports the Attorney General's opinion of 1990. Interpreting "inmate of a public institution" in the Social Security Act and its implementing

regulations to include pretrial detainees in a local jail is consistent with the federal statute's purpose of excluding FFP for medical services to those persons. The purpose of the public-institution inmate exclusion is stated in the background introduction to the adoption of present 42 C.F.R. § 435.1008(a), as follows:

"Section 1905(a) of the Social Security Act (the Act) prohibits Federal payments for services provided to inmates of public institutions which are not medical institutions or to individuals under age 65 who are patients in an institution for mental diseases or tuberculous unless these individuals are under age 22 and are receiving covered inpatient services in psychiatric facilities. *The intent of this provision is to ensure that Medicaid funds are not used to finance care which traditionally has been the responsibility of State and local governments.*"

50 Fed.Reg. at 13196 (emphasis added).

In Maryland, the obligation of county sheriffs, as superintendents of their county's jail, to provide for the medical treatment of inmates, including pretrial detainees, goes back in statutory form to 1825, and as a matter of common law or practice, probably even further. 1 W.H. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables* (1941), discusses medical services rendered to prisoners. The author concludes that "[w]hile the sheriff may be and is under a duty to procure such services," it is primarily the obligation of the county to pay for the services rendered. *Id.* § 278, at 283. The Supreme Court of the United States has held that "[t]he Due Process Clause, [requires] the responsible government or governmental agency to provide medical care to" pretrial detainees. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605, 611 (1983). The Court, however, was careful to point out that "[n]othing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him." *Id.* at 245 n. 7, 103 S.Ct. at 2984 n. 7, 77 L.Ed.2d at 612 n. 7. It seems to me entirely consistent with the federal objective of avoiding obligations for

medical care traditionally provided by local government that Medicaid not cover medical treatment to any detainees in the custody of local jailers.

In this case the majority rejects the Attorney General's interpretation of 42 C.F.R. § 435.1009(b). That regulation excepts from the exclusion for inmates one who is in a public institution "for a temporary period pending other arrangements appropriate to his needs." The Attorney General reads the reference to temporary arrangements as containing an element of inappropriateness which contrasts with "other arrangements" that would be "appropriate to" the inmate's needs. 75 Op. Att'y Gen. at 1103. The Attorney General saw nothing inappropriate in confining one who was denied bail or who could not make the bail that was set. To me, the Attorney General's reading is the natural import of the words used. The majority, however, rejects this reading, saying that it fails to follow "a common sense approach to the language of the applicable statutes." 338 Md. 286, 300, 658 A.2d 255, 262 (1995). Applying its "common sense," the majority interprets the statute as if it read that the inmate "is appropriately in a public institution for a temporary period pending other appropriate arrangements." The majority cites no authority for its interpretation.

One commentator, 2 H. McCormick, *Medicare and Medicaid Claims and Procedures* § 898, at 312 (2d ed. 1986), describes the operation of 42 C.F.R. § 435.1009 and says:

"A person is not considered an inmate ... when he is in a public institution for a temporary emergent period pending other arrangements appropriate to his needs."

"Emergent" means, secondarily, "suddenly appearing: arising unexpectedly; *often:* calling for prompt action: URGENT." Webster's Third New International Dictionary 741 (1976). McCormick's view supports the Attorney General, not the majority.

It is also apparent that the federal and state administrative interpretation antedating the 1990 opinion of the Attorney General supports that opinion. Those possessing the most

basic acquaintance with current events in Maryland will immediately recognize that, in seeking an Attorney General's opinion, Baltimore City was hoping for a ruling that the Maryland Medical Assistance Program could not lawfully exclude jail detainees from its coverage. The clear implication of the request is that prior to 1990 the federal and the Maryland interpretation of Medicaid excluded reimbursement to local governments for jail prisoners, including pretrial detainees. In the inmate population of the then Baltimore City Jail, the whole numbers of pretrial detainees were substantial, particularly relative to other local jurisdictions.

On the other hand, the interpretation by the majority in this case implies a long-standing dereliction of duty on the part of Maryland public officials at the state and local levels. Under the majority's "temporary, but appropriate," confinement exception, pretrial detainees are not inmates of public institutions. Under that reading, from the beginning of Medicaid custodians of pretrial detainees throughout the United States may well have been collecting federal reimbursement for medical care for those detainees, while Maryland custodians, DHMH, and the Attorney General remained in blissful ignorance of the availability of federal reimbursement. In my view it is far more likely that, if the federal administrative interpretation were the same as that of the majority in this case, the word would rapidly spread from state to state. In any event, the implication of the majority's position is contrary to the strong presumption that public officers properly perform their duties. *In re Bennett,* 301 Md. 517, 526, 483 A.2d 1242, 1246 (1984); *Lerch v. Maryland Port Auth.,* 240 Md. 438, 457, 214 A.2d 761, 771 (1965). The majority has cited no legal precedent nor factual history to rebut this presumption.

The reference in present Art. 87, § 46(c)(2) to information furnished by the sheriff's prisoner relating to "eligibility for benefits under the Maryland Medical Assistance Program to which the prisoner is entitled," is not inconsistent with the Attorney General's conclusion. Section 46 covers both prisoners awaiting trial and those who are serving a sentence of confinement in the local correctional facility. When the provi-

sion was added to § 46(c)(2) in 1988, HG § 15–113(b)(1) continued to refer to possible DHMH payment of medical services rendered in the first month of a prisoner's confinement, even though Federal Regulations in 1985 had abolished Medicaid reimbursement for medical services rendered during the first and last months of a prisoner's confinement. Further, when § 46(c)(2) was added, the Maryland Medical Assistance Program included the Medical Assistance—State–Only Eligibility (MASO) that was not abolished until 1992.

For these reasons, I concur in the Attorney General's opinion that medical services to pretrial detainees are not covered by Medicaid. To reach its result the majority, however, goes further and erects a condition precedent to the enforcement of the restitution obligation of the prisoner for the cost of medical services provided at public expense. The majority uncovers the condition in the words "as appropriate" that appear in Art. 87, § 46(c). The context in which those words appear is as follows:

> "Sick, injured, or disabled prisoners including those committed to the Commissioner of Pretrial Detention and Services shall be responsible for reimbursing the county or the State, as appropriate[,] for the payment of all medical care . . . ."

In this context, "as appropriate," plainly means the respective county or, in Baltimore City, the State, that made the initial expenditure for which restitution is sought.

The foregoing chronological review of the relevant statutes also demonstrates the strong and consistent policy by the General Assembly that detainees should make restitution for the cost of their medical care, either personally or through a third party payor. By creating both an apparently nonexistent third party payor and a legislatively non-stated condition precedent, the majority succeeds only in frustrating the General Assembly's policy. If federal Medicaid administrators, awaiting a definitive determination, refuse to follow the majority's position, Maryland law will continue to block restitution actions against pretrial detainees, based on what, in the na-

tional scheme of things, would be an illusory right to federal reimbursement.

Judge KARWACKI has authorized me to state that he joins in the views expressed in this dissenting opinion.