## In re J.J.
*[Cite as 3 AOA 325]*

*Case No. CA89-11-155*
*Butler County, (12th)*
*Decided May 7, 1990*

John F. Holcomb, Butler County Prosecuting Attorney, Kathleen D. Romans, 300 N. Fair Avenue, Hamilton, Ohio 45011, for Appellee, Butler County Children Services Board.

Fred Miller, 300 Dollar Federal Bldg., Hamilton, Ohio 45011, for Appellant, D.J.

Finkleman, Forshaw, Milbauer and Booher Co., L.P.A., Karan H. Horan, 11 S. Main Street, Suite 405, Middletown, Ohio 45044, for Appellant, J.J.

Mary K. Dudley, 709 Dayton Street, Hamilton, Ohio 45011, Guardian Ad Litem.

*Per Curiam.*

This cause came on to be heard upon an appeal, transcript of the docket, journal entries and original papers from the Butler County Court of Common Pleas, Juvenile Division, transcript of proceedings, and the briefs of counsel, oral argument having been waived.

Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App. R. 12(A) as follows:

Fourteen-year-old J.J. appeals a judgment entry from the Juvenile Division of the Butler County Court of Common Pleas finding J.J. to be a dependent child and ordering him to undergo medical treatment for gonorrhea. J.J.'s mother, D.J., appeals the same entry which ordered her to pay the costs of J.J.'s medical treatment.

On July 15, 1989, D.J. took her son, who was complaining of pain in his lower abdomen and testicles, to the Middletown Regional Hospital where the attending physician diagnosed J.J. as suffering from a severe case of acute gonorrhea. Both J.J. and D.J. refused medical treatment claiming their religious beliefs in faith healing prohibited J.J. from accepting medical help. Appellants persisted in their refusal even after the attending physician advised them that if left untreated, gonorrhea could cause arthritis, sterility, and in some cases, even death. Despite this information, appellants still refused medical treatment whereupon the physician informed them he would have to contact the Butler County Children Services Board ("Board").

The Board subsequently filed a complaint alleging that J.J. was a dependent child. The court appointed separate counsel to represent each of the appellants. At an adjudicatory hearing, the court heard testimony from the child and his mother indicating that although they both held the same religious tenants, it was J.J. who ultimately decided not to receive treatment. At the conclusion of the hearing, the court adjudicated J.J. a dependent child. At a subsequent dispositional hearing during which J.J. still refused treatment on religious grounds, the court ordered the child to undergo treatment and receive penicillin injections and oral antibiotics.

On appeal, J.J. presents one assignment of error which claims:

"The trial court erred in adjudicating the appellant a dependent child, as defined by Revised Code Section 2151.04(C)."

In addition, J.J.'s mother presents the following assignments of error, the first of which will be considered in conjunction with her son's assignment.

### First Assignment of Error

"The trial court erred in adjudicating the appellant a dependent child as defined by Ohio [R]evised Code Section 2151.04(C)."

### Second Assignment of Error

"The trial court erred to the prejudice of appellant's mother when it ordered her to pay all medical costs in this case."

The primary issue to be decided in this appeal is whether a juvenile's refusal to accept necessary medical treatment on the basis of the juvenile religious beliefs may be used as grounds for adjudicating the juvenile a dependent child. The United States Supreme Court has recognized that in matters involving the free exercise of religious beliefs, parents, while free to make martyrs of themselves, are not free under identical circumstances to make martyrs of their children before the children have reached the age of full and legal discretion when they can make choices for themselves. *Prince* v. *Massachusetts* (1944), 321 U.S. 158, 170, 64 S.Ct. 438, 444. This reasoning is predicted upon the realization that while the First Amendment guarantees freedom of religion, it has never been interpreted as an absolute proscription on government regulation of religious practices. *Birch* v. *Birch* (1984), 11 Ohio St. 3d 85. Although the First Amendment guarantees the freedom to believe and the freedom to act, the latter is not absolute and is subject to regulation for the protection of society. *Cantwell* v. *Connecticut* (1940), 310 U.S. 296, 303-304, 60 S.Ct. 900, 903; *Birch, supra.* Thus, in matters of medical treatment, the religious faith and beliefs of parents whose child requires medical attention do not permit the parents to expose the child to progressive ill health and potential death and parents may not make martyrs of their children before the children have reached the age of full and legal discretion. *In Re Willman* (1986), 24 Ohio App. 3d 191.

The case at bar does not easily fit into this analytical framework since the question herein is not one of whether the parents have denied necessary medical treatment to their child on the basis of their religious beliefs, but whether a juvenile can make such a decision for himself on similar grounds. In other words, has the juvenile reached the "age of full and legal discretion" where he can make the choice for himself? "Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood* v. *Danforth* (1976), 428 U.S. 52, 74, 96 S.Ct. 2831, 2843. Nevertheless, the state has broader authority to regulate the activities of children than of adults. *Id.; Prince* v.*Massachusetts, supra,* at 170, 64 S.Ct. at 444.

Both J.J. and his mother testified that the decision to refuse medical treatment had been J.J.'s alone and that the mother simply supported her son in that decision. The Ohio Supreme Court stated the following in *In Re Milton* (1987), 29 Ohio St. 3d 20, 26, certiorari denied (1987), 484 U.S. 820, 108 S.Ct. 79:

"* * * the state may not compel a legally competent adult to submit to medical treatment which would violate that individual's religious beliefs even though the treatment is arguably life-extending."

Our question is whether a juvenile can make a similar choice.

J.J's argument is that his actual age is irrelevant since the law recognizes a minor's ability to engage in acts and make decisions involving legal consequences well before he reaches the majority age of eighteen. Such acts and decisions include testifying in a court of law, expressing his or her preference for a custodial parent, and obtaining a driver's permit. The state's ability to set age limits as prerequisites for individual activities has long been recognized as a legitimate exercise of its sovereign power. See *Gaunt* v. *Brown* (S.D. Ohio 1972), 341 F. Supp. 1187, affirmed (1972), 409 U.S. 809, 93 S.Ct 69. One commentator, in writing on the state's interest in setting age limitations, made the following observation:

"The validity of an age limit is not contingent upon the level of competence of those it affects; rather, its legitimacy is determined by the state interest protected and the rationality of the relationship between the prescription and the interest. Valid age limits attach to every aspect of personal and public activity: eligibility for public office, motor vehicle operation, voting, marriage, employment, social security benefits, *ad infinitum.* Separate, but not conceptually distinct from these function-directed age limits which determine access to rights, privileges, and benefits, is the concept of majority or age of discretion. While this age is also legislatively determined, it carries with it a broader impact and serves as a declaration of generalized legal

competence. * * * These function-related age rules permit a scaled-down access to society, and at best should provide for a gradual assumption of responsibility and expression of individuality on the part of a child."

Monsees, The Sometimes-Person: Legal Autonomy and the Child (1979), 6 Ohio N.U.L. Rev. 570, 582.

Accordingly, the age-regulation of a juvenile's activities often serve interests beyond the child's immediate protection, and the state's reasons in imposing such regulations may be primarily directed towards the public-at-large. *Id.* at 583.

We recognize that an individual's decision to forego traditional medical care and rely on faith healing is encompassed within the freedom of religion. *In Re Milton, supra.* However, J.J. has been diagnosed with having a highly communicable disease and has admitted that he is sexually active. Freedom of religion may be infringed only to prevent grave and immediate dangers to interests which the state may lawfully protect. *Id.* at 24. J.J.'s refusal to receive medical treatment creates a real and substantial risk not only to himself but to other members of the community. The state has a legitimate interest in preventing the spread of this contagious and potentially deadly disease. In addition, the right to freely practice religion does not include liberty to expose the community to communicable disease or subject a child to ill health or death. *Prince* v. *Massachusetts, supra.*

A dependent child is one "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship." R.C. 2151.04(C). Dependency must be proved by clear and convincing evidence. *In Re Bishop* (1987), 36 Ohio App. 3d 123. The refusal of parents for religious reasons to allow medical treatment of their child is sufficient to justify a determination that the juvenile was a dependent child within the meaning of R.C. 2151.04(C). *In Re Willman, supra.* We see no reason why a similar finding may not be made where the juvenile refuses further medical treatment for religious reasons. While it is true that an adult can refuse medical treatment on religious grounds, the law does not grant a similar right to a juvenile. Thus, despite a juvenile's progressive capacity, one who is under the age of majority has not reached the age of full and legal discretion. We therefore hold that the state may compel a juvenile who has not reached the age of majority to submit to medical treatment for a contagious and potentially life-threatening disease even though such would violate the juvenile's religious beliefs. For these reasons, the juvenile's assignment of error and his mother's first assignment of error are hereby overruled.

For her second assignment of error, the mother claims that the trial court abused its discretion in ordering her to pay the costs of J.J.'s medical treatment when the court failed to consider her ability to pay and the fact that she was not at fault in either contracting the disease or refusing medical treatment.

Unquestionably, parents have a legal and societal duty to support their children. *Children's Hospital of Akron* v. *Johnson* (1980), 68 Ohio App. 2d 17. This duty of support clearly includes medical expenses. *Id.* Thus, when parents are *able* it is their responsibility to provide for the reasonable needs of their children including the payment of necessary medical expenses. *Id.* D.J. has not proved she is indigent except with respect to her inability to hire an attorney. She is, however, legally responsible for these expenses and the issue of her ability to provide payment can be addressed at such time when she is actually assessed charges for these expenses. Accordingly, the mother's second assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and YOUNG, JJ., concur.