GRIFFIN, J., delivered the opinion of the court in which GUY, Jv joined. CLAY, J. (pp. 482-92), delivered a separate dissenting opinion.
OPINION
GRIFFIN, Circuit Judge.
The Ohio Department of Medicaid petitions this , court for review of an order entered by the Centers for Medicare and Medicaid Services (CMS) denying a proposed amendment to the State’s Medicaid plan. At issue is whether Ohio’s juvenile pretrial detainees are “inmate[s] of a public institution”—a population ineligible for federal Medicaid reimbursement under 42 U.S.C. § 1396d(a)(29)(A). CMS has deter-, mined they are. Because the agency’s interpretation is not arbitrary, capricious, or an abuse of its discretion, we deny the petition for review.
I.
A.
Medicaid is a cooperative federal-state program that provides funds to participating states for the medical care of needy individuals. Harris v. Olszewski, 442 F.3d 456, 460 (6th Cir. 2006). To qualify for federal funds, states must submit to CMS “a state Medicaid plan that details the nature and sqope of the State’s Medicaid program. It must also submit any amendments to the plan that it may make from time to time,” Douglas v. Indep. Living Ctr. of S. Cal., Inc., 565 U.S. 606, 610, 132 S.Ct. 1204, 182 L.Ed.2d 101 (2012). Before approving a state’s plan or an amendment to it, CMS reviews the plan for compliance with all statutory and regulatory requirements. See Rosen v. Goetz, 410 F.3d 919, 927 (6th Cir. 2005); see also 42 U.S.C. §§ 1316(a)(1), (b) & 1396a(b). “And ... the agency will not provide federal funds for any state plan amendment until the agency approves the amendment.” Douglas, 565 U.S. at 611, 132 S.Ct. 1204.
One constraint on state plans is Medicaid’s inmate exclusion, which prohibits federal financial participation (FFP) for state medical éxpenditures made on behalf of “any individual who is an inmate of a public institution (except as a patient in a medical institution).” 42 U.S.C. § 1396d(a)(29)(A).[1] State governments are traditionally responsible for the medical care of those they punish by incarceration. See Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); see also Brown v. Plata, 563 U.S. 493, 510-11, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011). And “[t]he intent of [this] prohibition is to ensure that federal Medicaid funds are not used to finance care that is the responsibility of state and local authorities.” Carolyn L, Yocom, U.S. Gov’t Accountability Off., *473 GAO-14-752R Medicaid: Information on Inmate Eligibility and Federal Costs for Allowable Services (2014) (footnote omitted).
CMS defines who is, and who is not, an “inmate of a public institution” in - 42 C.F.R. § 435.1010. The regulation provides in pertinent part:
Inmate of a public institution means a person who is living in a public institution, An individual is not considered an inmate if—
[[Image here]]
(b) He is in a public institution for a temporary period pending other arrangements appropriate to his needs.
Id. (emphasis added). An individual is an “inmate of a public institution” barred from coverage if he “is living in a public institution.” Id. However, an individual living in a public institution is not an “inmate of a public institution”—and therefore not barred from coverage—if he resides in the public institution “for a temporary period pending other arrangements appropriate to his needs.” Id.
B.
In early 2014, Ohio submitted a proposed plan amendment to CMS aimed,at exploiting this distinction. Specifically, it sought to classify pretrial detainees under age 19 as non-inmates—i.e., those who live in a public institution for only “a temporary period pending other arrangements appropriate to [their] needs,” and for whom the State can claim federal Medicaid reimbursement. In so doing, petitioner acknowledged it was “requesting ... Medicaid coverage for a specific population that is currently ineligible for Medicaid benefits.”
After requesting and receiving further information from Ohio, CMS denied the amendment. Respondent explained that the inmate exclusion recognizes “no difference” between adults and juveniles, or convicted detainees and those awaiting trial. “For purposes of excluding FFP, for example, a juvenile awaiting trial in a detention center is no different than an adult in a maximum security prison,” “both are considered inmates, of a public institution.” It also rejected Ohio’s , argument that juvenile pretrial detainees fit the regulatory exception for individuals living in a public institution for a “temporary period,” and instead emphasized that the involuntary nature of the stay is the determinative factor: “This exception ..does not apply when the individual is involuntarily residing in a public institution awaiting adjudication of a criminal matter.”
Ohio challenged the decision through a CMS hearing officer and an administrator, and both affirmed the denial. It now petitions for review of the administrator’s ruling as the Secretary’s final decision.
II.
The Administrative Procedure Act governs our review of the Secretary’s decision. Battle Creek Health Sys. v. Leavitt, 498 F.3d 401, 408-09 (6th Cir. 2007). “The APA, which is incorporated by the Social Security Act, see 42 U.S.C. § 1359oo(f)(1), commands reviewing courts to ‘hold unlawful and set aside’ agency action that is ‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ ” Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (quoting 5.U.S.C. § 706(A)(2)). CMS falls short of this standard if its decision “relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation that runs counter to the evidence before the agency, or is so .implausible that it could not be ascribed to a *474 difference in view or the product of agency expertise.” Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).
A.
“The Medicaid Act commits to the federal agency the power to administer a federal program.” Douglas, 565 U.S. at 614, 132 S.Ct. 1204. “And here,” in denying Ohio’s proposed amendment, “the agency has acted under this grant of authority.” Id. Section 1396a(b) of the Act directs the Secretary to approve state plans that “ful fill! ] the conditions specified” in the statute, and reject those that do not. 42 U.S.C. § 1396a(b). Through this “express delegation of specific interpretive authority,” United States v. Mead Corp., 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), “Congress manifested its intent that the Secretary’s determinations, based on interpretation of the relevant statutory provisions, have the force of law.” Pharm. Research & Mfrs. of Am. v. Thompson, 362 F.3d 817, 822 (D.C. Cir. 2004). Accordingly, we give the agency’s decision to disapprove the amendment the benefit of Chevron deference. See Harris, 442 F.3d at 467, 470; see also Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
“When a court reviews an agency’s construction of the statute which it administers” under Chevron, “it is confronted with two questions.” 467 U.S. at 842, 104 S.Ct. 2778. “First, always,” is whether “Congress has directly spoken to the precise question at issue.” Id. (emphasis added). “If it has, ‘that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.’” Harris, 442 F.3d at 466 (quoting Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778). Second, if Congress has not spoken to the precise question at issue, and the statute is silent or ambiguous, we ask “whether the agency’s answer is based on a permissible construction of the statute.” Chevron, 467 U.S. at 843, 104 S.Ct. 2778. “Permissible” does not mean the agency’s construction was “the only one” CMS could have adopted, or “even the reading we would have reached if the question initially had arisen in a judicial proceeding.” Battle Creek, 498 F.3d at 408-09 (quoting Jewish Hosp., Inc. v. Sec’y of Health & Human Servs., 19 F.3d 270, 273-74 (6th Cir. 1994)). It means we defer to the agency’s reading unless it is “arbitrary, capricious, or manifestly contrary to the statute.” Chevron, 467 U.S. at 844, 104 S.Ct. 2778 (footnote omitted). Because the Medicaid Act is silent regarding the precise question at issue here—whether the term “inmate” encompasses juvenile pretrial detainees—we proceed to the second step of the inquiry.
The administrator found § 1396d(a)(29)(A) “unambiguous[lyj” prohibits federal funding “for medical care of an ‘inmate’ ... unless the inmate is in a medical institution.” “In setfting] forth this prohibition,” he noted, “the statute does not differentiate between types of inmates, for example by age (juvenile or adult) or by status (detained or sentenced).” Nor does the term “inmate” imply such a distinction. “[Ijnmate” is “synonymous with ... prisoner, convict, and detainee,” or in other words, “a person confined to an institution.” Like their adult “inmate” counterparts, juvenile pretrial detainees are “confined to an institution.” “Thus,” he determined that the statute treats them the same as any adult “prisoner, convict or detainee”—it precludes federal funding for their care. This construction is permissible.
*475 l.
First and foremost, it accords with the plain language of § 1396d(a)(29)(A) and the “ordinary and natural meaning” of “inmate.” Harris, 442 F.3d at 466 (brackets and citation omitted). “In determining a term’s ordinary meaning, dictionaries are a good place to start.” Wheaton v. McCarthy, 800 F.3d 282, 287 (6th Cir. 2015) (brackets and citation omitted). An “inmate” is “a person confined in a prison, hospital, or similar institution”— with “confined” being the operative word. Inmate, Black’s Law Dictionary 908 (10th ed. 2009). “Prisoner; inmate; confinee.... These terms all denote one who is deprived of liberty and held in custody.” See Garner’s Dictionary of Legal Usage 708-09, 459 (3d ed. 2011) (directing readers to “prisoner” in order to define the term “inmate”). This “ordinary meaning” does not differentiate by age or conviction status, Wheaton, 800 F.3d at 287, and neither did Congress in drafting the exclusion. Whether juvenile or adult, pretrial detainees fit this definition; they are “confined,” “deprived of liberty,” and “held in custody.”
Even so, Ohio argues “it would be a mistake to import significance” to Congress’s “failure to distinguish between adults and children,” because at the time of Medicaid’s 1965 enactment, “it was self-evident” that the law treated juveniles differently, affording them fewer rights than those granted to adults facing criminal charges.[2] We think it more “self-evident” that when Congress intends to apply an age-based distinction, it drafts one. In other subsections of § 1396d, it did just that. See 42 U.S.C. §§ 1396d(a)(i), (iii), & (v) (referring to individuals “under the age of 21,” “65 years of age or older,” and “18 years of age or older”); id. at § 1396d(h) (“Inpatient psychiatric hospital services for individuals under age 21”); id. at § 1396d(w)(1)(A) (defining an “independent foster care adolescent” as an individual who is “under 21 years of age”). Had it intended a similar age-based distinction for the inmate exclusion, “Congress, we take it, would have included a similar direction in that section.” E.P.A. v. EME Homer City Generation, L.P., — U.S. —, 134 S.Ct. 1584, 1601, 188 L.Ed.2d 775 (2014). However, it did not. See Jama v. Immigration and Customs Enf't, 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) (“We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.”). Congress instead gave the exclusion a broad reach, precluding “any such payments with respect to care or services for any individual who is an inmate of a public institution”—and permitting an exception for reimbursement based not on age, but on location of the service, i.e., when the inmate is “a patient of a medical institution.” 42 U.S.C. § 1396d(a)(29)(A) (emphasis added, parenthesis omitted).
Ohio alternatively suggests that if the text of § 1396d(a)(29)(A) does not include an exception for juvenile pretrial detainees, we may opt to ignore it. To petitioner, the statutory inmate exclusion is “not [even] at issue” here “because CMS has created regulations implementing that statute” in 42 C.F.R. § 435.1010—the regulation that defines “inmate” and sets forth the “temporary period” exception upon which petitioner relies. Ohio insists it is “[t]hose regulations,” and “not the Med *476 icaid Act” that ought to “control [the] availability óf FFP in this case.”
We agree the regulation is central to the petition for review; but not to the exclusion of the statute. Ohio seems to believe its chances at Medicaid reimbursement are better under the regulation penned by CMS than the statute penned by Congress. But if that Were the case, it would not mean petitioner’s amendment should be approved—it would mean CMS’s regulation is overbroad. “Agencies,” after all, “are creatures of statutory authority.” Friends of Crystal River v. E.P.A., 35 F.3d 1073, 1080 (6th Cir. 1994). They “may not confer power upon [themselves],” and have “literally no power to act ... unless and until Congress confers power upon [them].” La. Pub. Serv. Comm’n v. F.C.C., 476 U.S. 355, 374, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). And agency “regulations, in order to be valid, must be consistent with the statute under which they aré promulgated.” Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 133 S.Ct. 1326, 1334, 185 L.Ed.2d 447 (2013) (quoting United States v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)). CMS is free to adopt regulations in order to fill legislative gaps or resolve ambiguities. See Chevron, 467 U.S. at 843-44, 104 S.Ct. 2778; see also Mead, 533 U.S. at 229, 121 S.Ct. 2164. But it cannot “override Congress” with a regulation permitting broader coverage than the Medicaid Act itself. La. Pub. Serv. Comm’n, 476 U.S. at 375, 106 S.Ct. 1890. Neither can we in interpreting Congress’s language—our “task is to’ apply the text of the statute, not improve upon it.” EME Homer City Generation, 134 S.Ct. at 1600 (citation and brackets omitted).
2.
. The administrator’s interpretation is also consistent with the statute’s legislative history, which reflects a Congressional judgment, that Medicaid should not fund “items and services which are paid for directly or indirectly by [another] governmental entity,” such as the states. S. Rep. 89-404, 1965 U.S.C.C.A.N. 1943, 1989 (June 30, 1965); see also Medicaid Program; Federal Financial Participation for Inmates in Public Institutions and Individuals in an Institution for Mental Disease or Tuberculosis, 50 Fed. Reg. 13196-01, 13196 (April 3, 1985) (codified at 42 C.F.R. pts. 435 & 436) (“The intent of this provision is to ensure that Medicaid funds are not used to finance care which traditionally has been the responsibility of State and local governments.”). Requiring states to pay for some of the care they traditionally provide is not unreasonable “in the context of a federal statute that relies on state and federal cooperation (and state and federal money).” Harris, 442 F.3d at 468.
Ohio acknowledges that Medicaid is not intended to “supplant[]” its obligation to provide its prisoners medical care. For juveniles, however, petitioner argues it “does not have that obligation ... in the first instance” thanks to Ohio Revised Code § 2151.36. Section -2151.36 requires juvenile courts to order a child’s parents or guardians to “pay for the care, support, maintenance and education of the child” while in state custody. Id. Ohio therefore reasons that “[a]t most,” CMS “might be supplanting a parent’s obligation” to provide for a juvenile detainee’s care, not the state’s obligation. And supplanting a parent’s obligation is what CMS does “any time it provides FFP for services ... to a minor,” so there is no harm in granting the state’s proposed amendment here.
But a statute that shifts an expense to parents is not a license to further shift that expense to the federal government. Parents “[ujnquestionably” have a duty to provide for their children’s medical care; when *477 they are financially ‘‘able” to do so. In re J.J., 64 Ohio App.3d 806, 582 N.E.2d 1138, 1141 (1990) (per curiam) (emphasis in. original). However, parents of children eligible for Medicaid are not able to do so. In that circumstance, § 2151.36 provides that the cost of juvenile detainee medical care “shall be paid from the county treasury.”[3] Ohio Rev. Code § 2151.36;. see e.g., In re Hoodlet, 72 Ohio. App.3d 115, 593 N.E.2d 478, 481-82 (1991). Ultimately then, Ohio’s proposed amendment does not merely “supplant[ ]” a parent’s obligation. It does just what Congress sought to avoid: allocate “Medicaid funds ... to finance care which traditionally has been the responsibility of State and local governments.” 50 Fed. Reg. at 13196.
B.
Another problem with Ohio’s regulation-trumps-the-statute theory is that it presupposes its own conclusion; it assumes the regulation is, in fact, more, expansive than the statute. Compare 42 U.S.C. § 1396d(a)(29)(A) with 42 C.F.R. § 435.1010. We conclude it is not.
1.
Before reviewing thé administrator’s construction of § 435.1010, we must decide as a threshold matter whether the regulation is ambiguous. If it is, Ohio faces an uphill climb. “The deference accorded to an agency’s interpretation of its own ambiguous regulation is substantial and afforded even greater consideration than the Chevron deference accorded to an interpretation of an ambiguous statute.” Thornton v. Graphic Commc’ns Conference of Int’l Bhd. of Teamsters Supplemental Ret. and Disability Fund, 566 F.3d 597, 611 (6th Cir. 2009). We give CMS’s interpretation “controlling” weight unless it is “plainly erroneous or inconsistent with the regulation.” Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (citation omitted). If the regulation is not ambiguous, we forego deference and apply the plain language of the regulation as written. Christensen v. Harris Cty., 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).
Section 435.1010 provides in pertinent part:
Inmate of a public institution means a person who is living in a public institution. An individual is not considered an inmate if—
(a) He is in a public educational or vocational training institution for purposes of securing education or vocational training; or
(b) He is in a public institution for a temporary period pending other .arrangements appropriate to his needs,
⅜ ⅝ ⅝
Public institution means an institution that is the responsibility of a governmental unit or over which a governmental unit exercises administrative control. The term “public institution” does not include—... A medical institution ’...; A publicly operated community residence ...; or A child-care institution.
42 C.F.R. § 435.1010. A regulation is ambiguous when its meaning is “not free from doubt,” Martin v. Occupational Safety & Health Review Comm’n, 499 U.S. 144, 150, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991), and its language “compel[s]” no particular interpretation, Thomas Jefferson Univ., 512 U.S. at 512, 114 S.Ct. 2381. Considered in isolation, subsection (b) may inspire some *478 doubt over whether juvenile pretrial detainees are barred from Medicaid coverage—especially since their living status is “temporary” pending the results of adjudication. See Ohio Rev. Code § 2151.011(B)(13) (“ ‘Detention’ means the temporary care of children pending court adjudication or disposition ... ”). Given that § 435.1010 is arguably ambiguous as applied to the population at issue here, we afford the Secretary’s interpretation Auer deference.
2.
Ohio maintained before the administrator that juvenile pretrial detainees are not inmates within the meaning of the statute or the regulation because the state holds them “in a public institution only until the[ir] case[s] [are] resolved” and the court makes “other ... arrangements” for their care. But this reasoning, the administrator explained, “erroneously elevates the ‘temporary’ ” nature of the stay above the involuntary nature of the detention—which he viewed as the deciding factor for eligibility. “The involuntary nature of the stay is characteristic of a ‘prisoner’ or ‘detainee’ or, in short, a word that covers both the sentenced individual and pretrial detainees, an inmate.” Juvenile pretrial detainees are confined involuntarily, and, therefore, he found, they are “inmate[s].”
Ohio argues the administrator’s ruling was in error because there is no express voluntariness requirement in § 435.1010. True enough. But the concept of voluntariness is expressed throughout the regulation. The word “inmate,” which appears in both the statute and the regulation, is the most obvious example. Again, “inmate” ordinarily “denote[s] one who is deprived of liberty and held in custody.” See Garner’s Dictionary of Legal Usage, at 708-09. This commonly understood definition of “inmate” “comfortably bears the meaning the Secretary assigns”; an individual subject to involuntary confinement. See Auer, 519 U.S. at 461, 117 S.Ct. 905 (consulting dictionaries to assess the validity of the agency’s interpretation of its own regulations). Exclusions within the regulation also support the agency’s reading. Subsection (a), for instance, specifies that an individual who “is in a public educational or vocational training institution for the purposes of securing education or vocational training” is not an inmate, 42 C.F.R. § 435.1010. This is so because, as CMS explains, “an individual who seeks [such] training ... is free to leave at any time.”
The definition of “public institution,” where “inmates” reside, is another example. A “public institution” does not include facilities known as “publicly operated community residence[s].” 42 C.F.R. § 435.1010. A “publicly operated community residence,” in turn, is a residence providing “some services beyond food and shelter such as social services, help with personal living activities, or training in socialization and life skills,” but “does not include ... [correctional or holding facilities for individuals who are prisoners, have been arrested or detained pending disposition of charges, or are held under court order as material witnesses or juveniles”— i.e., pretrial detainees. Id. (emphasis added). However awkwardly written, the double negative employed here—excluding the term “publicly operated community residences” from “public institutions,” and excluding pretrial detainees from “publicly operated community residences”—conveys that pretrial detainees are indeed among the “inmates” who live in public institutions.
The same is true for “child-care institutions.” “Public institutions” exclude “childcare institutions,” and “child-care institutions” likewise “do[ ] not include detention facilities” or “any other facility operated *479 primarily for the detention of children who are determined to be delinquent.” 42 C.F.R. § 435.1010. Here, too, the double-negative grammatical scheme conveys that “delinquent” children housed in “detention facilities” are not considered to be residing in “child-care institutions.” Rather, they are “inmates” residing in “public institutions” on whose behalf the state may not claim Medicaid funds.
Whereas CMS’s interpretation compliments the regulation’s language, Ohio’s interpretation proposes to change it. The state plan amendment petitioner submitted to CMS essentially copies § 435.1010(b) with the addition of the italicized language:
Individuals are not considered inmates if they are in a public institution for a temporary period pending other arrangements appropriate to their needs, including individuals under age 19 in detention who have not been adjudicated and are there for a temporary period pending other arrangements appropriate to their needs.
(Italic emphasis added.) A person held in pretrial detention may be there for only a “temporary period,” but “temporary period” (as used in the original § 435.1010) is modified by “pending other arrangements appropriate to their needs.” 42 C.F.R. § 435.1010. If that exclusionary language already fits the class of persons for whom Ohio seeks federal funds, then the state’s proposed amendment is unnecessary. By explicitly referring to “individuals under 19 ,.. who have not been adjudicated,” Ohio all but admits that the regulation as written must not include this population. Finding the Secretary’s denial arbitrary, capricious, or “otherwise not in accordance with law” is difficult when, even under Ohio’s construction, the regulation would have to be changed in order to accommodate its request. See 5 U.S.C. § 706(2)(A).
Although the foregoing counsels in favor of deference to the Secretary, there are exceptions to the general Auer rule, and petitioner claims this is an exceptional case. Deferring to the agency’s reading is inappropriate, for example, if its interpretation is “inconsistent with the regulation.” Auer, 519 U.S. at 461, 117 S.Ct. 905, Ohio argues that considering voluntariness is inconsistent with § 435.1010 at least when it comes to minors, a point illustrated by CMS’s policy regarding children in foster care who are indisputably not “inmates.” According to petitioner, “CMS maintains that a child in the State’s custody who is temporarily placed in foster care is not an inmate of a public institution because he is there ‘voluntarily,’ even though ... a child in state-ordered foster care is legally compelled to remain in foster care and is not permitted to choose to return home.” The state therefore concludes CMS’s interpretation is inconsistent—it permits FFP for some children held involuntarily in the state’s custody (children awaiting foster care placement) but not others (juvenile pretrial detainees). “For that matter,” adds Ohio, the voluntary-involuntary dichotomy is in-apposite for minors because, unlike adults, “children are not anywhere voluntarily.”[4] Petitioner is doubly mistaken.
For one, Ohio’s premise is faulty. Children in state custody for foster care purposes are excluded from the definition of “inmate[s]” not because their stay is deemed voluntary, but because they do not reside in “public institutions.”[5] For anoth *480 er, so is its broader implication. The fact that adults and juveniles enjoy different legal rights outside of .the detention setting does not mean that CMS must maintain separate rules for each group.[6] There is no “basis for suggesting that the Secretary has a statutory duty to promulgate regulations that, either by default rule or by speculation, address every conceivable question in the process of determining equitable reimbursement” to the states. Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 96, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995). What cannot be accounted for in regulations may be resolved in court, as Ohio has shown here. See id. (“The APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than adjudication.”).
Deferring to the. agency’s interpretation is also inappropriate where it is merely a “‘post hoc rationalization’ advanced by an agency seeking to defend past agency action against attack[.]” Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012) (quoting Auer, 519 U.S. at 462, 117 S.Ct. 905). The dissent argues that CMS has adopted its present interpretation of § 435.1010(b) as a “ ‘convenient liti gating position,’” id. (quoting Bowen v. Georgetown, Univ. Hosp., 488 U.S. 204, 213, 109 S.Ct 468, 102 L.Ed.2d 493 (1988)), and it is therefore not entitled to Auer deference.
The record belies the dissent’s argument. A -1997 CMS memorandum that sought to “clarify the Medicaid coverage policy for inmates in a public institution” states that the public institution exception “does not apply when the: individual is involuntarily residing in a public institution awaiting criminal proceedings, penal dispo-sitibns, or other involuntary detainment determinations.” The 1997 memorandum also states, consistent with CMS’s present argument, that “An individual is an inmate when serving time for a criminal offense or confined involuntarily in State or Federal prisons, jails, detention facilities, or other penal facilities.” (Emphasis added.) It further clarifies that “For purposes of excluding FFP, for example, a juvenile awaiting trial in a detention center is no different than an adult in a maximum security prison,” Contrary to the dissent’s view, CMS’s present interpretation is consistent with its longstanding position and is therefore entitled to Auer deference.
■3.
That § 435.1010 does not distinguish between adults and children is one of the reasons we decline to follow the Maryland Court of Appeals’ decision in Brown v. Cty. Comm’rs of Carroll Cty., 338 Md. 286, 658 A.2d 255 (1995). Ohio reads Brown as “holding] that’ individuals in custody awaiting trial are not ‘inmates of a public institution’ ” under the federal regulation; We read it differently.
The question in. Brown was “whether an indigent pretrial detainee may be held personally liable for the costs, of medical treatment, [he] received while incarcerated, despite-the fact...that he may have been covered under [Maryland’s, Medicaid program] for most of the period of his detention.” Id. at 257. Maryland’s state eligibili *481 ty rules incorporated the federal definition of “inmate of a public institution,” and made pretrial detainees “responsible for reimbursing the county, or State ,,, for the payment of all medical care” they received while awaiting trial. Id. at 258-69. Upon discharging Brown, Carroll County sued him for medical costs without first seeking reimbursement through the state’s Medicaid program. Id. at 257-58. Maryland’s highest court rejected this, strategy, but kept its holding decidedly narrow: “we hold that ... in the absence of [a] clear indication that pretrial detainees are ineligible for [Medicaid] coverage under federal law, the County should first have attempted to seek reimbursement” through Medicaid before' attempting to hold the indigent plaintiff personally liable. Id. at 264.
Ohio believes Brown demonstrates “that FFP is available for services provided to pretrial detainees.” We disagree. Petitioner here may challenge the same language considered in Brown, but that is where the similarities end. First, this case involves an interpretation of both the statutory inmate exclusion (which the majority in Brown did not address) and its accompanying regulation. Second, unlike the Maryland Court of Appeals, we may not review either provision de novo. We defer to CMS’s denial of Ohio’s state plan amendment so long as its statutory construction. is permissible, see Harris, 442 F.3d at 467, and its regulatory interpretation is not “plainly erroneous,” Auer, 519 U.S. at 461, 117 S.Ct. 905 (citation omitted). Third, the Brown court did not consider those portions of the federal regulation supporting the Secretary’s use of .voluntariness as the dividing line for eligibility. Nor, evidently, did it have the benefit of any interpretive guidance from CMS. See Brown, 658 A.2d at 260, 262 (‘We have found no authority to support the Attorney General’s contention that [the ‘temporary period’ exception] is not intended to be applicable to pretrial detainees.”). In fact, the majority explicitly conditioned the County’s duty to seek state benefits before suing Brown on “the absence of [a] clear indication that pretrial detainees are ineligible for [Medicaid] coverage under federal law.” Id at 264. Here, we have every “clear indication” that they are.
Yet, even setting those issues aside, we are left with the troublesome fact that Brown concerned an adult pretrial detainee. Ohio may;-for the moment, seek Medicaid funds only for its juvenile pretrial detainee population. But as petitioner’s counsel conceded at oral argument, if juvenile pretrial detainees are living “in a public institution for a temporary period pending other arrangements appropriate to [their] needs,” then adult pretrial detainees must also be living “in a public institution for a temporary period pending other arrangements appropriate to [their] needs,” 42 C.F.R. § 435.1010, permitting petitioner (and all other participating states) to claim federal funds on behalf of both groups. This outcome is contrary to forty-plus years of agency policy consistently denying Medicaid reimbursement for the care of pretrial detainees.[7] Ohio *482 has given us no reason to question the Secretary’s informed judgment in continuing that policy. See Harris, 442 F.3d at 468 (“Reliance on the Secretary’s significant expertise is also particularly appropriate in the context of a complex and highly regulated program like Medicaid.” (internal quotation marks and brackets omitted)).
III.
We find the Secretary’s construction of the statute “permissible,” Chevron, 467 U.S. at 843, 104 S.Ct. 2778, and his interpretation of the regulation “controlling,” Auer, 519 U.S. at 461, 117 S.Ct. 905. His decision does not “reify] on factors which Congress has not intended [him] to consider, entirely failf ] to consider an important aspect of the problem,” or offer “an explanation ... that runs counter to the evidence before the agency.” State Farm, 463 U.S. at 43, 103 S.Ct. 2856. Nor is it “so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” Id. It is not arbitrary, capricious, or an abuse of his discretion. Accordingly, we deny the petition for review.

. Under 42 U.S.C. § 1396a(a)(10)(A), a state's plan must provide "for making medical assistance available, including at least the care and services” listed in § 1396d(a). Section 1396d(a) defines "medical assistance” as "payment of part or all of the cost” of certain types of care, but specifically excludes "any such payments with respect to care or services for any individual who is an inmate of a public institution (except as a patient in a medical institution).” 42 U.S.C. § 1396d(a)(29)(A),

. Petitioner does not explain how the scope of a juvenile’s rights in a criminal proceeding relates to the federal government’s alleged obligation to finance his medical care.

. County treasuries are not responsible for “the part of-the expense that may be paid by the state or federal government.” Ohio Rev. Code § 2151.36. Of course, the source of those federal funds does not presently include the Medicaid program.

. Ohio forgets that the adults in this case "are not anywhere voluntarily” either. They are involuntarily confined to state custody pending trial.

. Again, "child-care institution[s]” that house children "for whom foster care maintenance payments are made under title IV-E of the Act,” and children “receiving [Aid to Families *480 with Dependent Children]—foster care under title IV-A of the Act,” are not "public institutions.” 42 C.F.R. § 435.1010, Because these children are not "living in a public institution,” they are not inmates.

. The foregoing discussion regarding die exclusions applicable to "publicly’, operated community residences” and "child-care institutions” demonstrates that even when the regulation refers to adult or juvenile inmates ' separately, it treats them the same for eligibility purposes,

. In this regard, we reject petitioner’s claim that CMS has applied the regulation inconsistently; if anything, the evidence Ohio submitted proves the opposite. For instance, the 1997 letter CMS directed to its regional offices explained that “a juvenile awaiting trial in a detention center is no different than an adult in a maximum security prison,” "both are inmates of a public institution” barred from coverage. The agency’s former practice of providing federal funds for the first and last months of an inmate’s incarceration likewise does not show inconsistency, as that was "a policy of administrative convenience,!’ "not a statutory requirement,” See 50 Fed. Reg. at 13196. Petitioner also points to a Regional *482 Commissioner’s 1973 statement indicating that juveniles are inmates "irrespective of whether [they] ... are detained by legal process.” Insofar as this statement can be read to support petitioner, and insofar as CMS is bound by an ambiguous 44-year-old remark, "the agency is entitled to change its view” so long as it "explain[s] its reasons for doing so.” State Farm, 463 U.S. at 56, 103 S.Ct. 2856. CMS did just that. Its 1997 letter recognized a need to "refine our coverage policy in this area,” and clarified that "there is no difference” in the application of the inmate exclusion to juveniles and adults.